IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN COMFORT BUILDERS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 00-755C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S POST-TRIAL BRIEF

Pursuant to the Court's order of April 20, 2004, the United States respectfully submits its reply to plaintiff's post-trial brief.

## I. Southern Comfort Has Offered No Convincing Defense To The Government's Fraud Case

### A. Southern Comfort Fails To Defend Its Fraudulent Actions By Citing To Non-Controlling Legal Authority

In its post-trial brief, Southern Comfort responds to the Court's request that the parties brief the issue of whether a contractor could be liable pursuant to the False Claims Act for a difference in interpretation of a contract provision: "[t]he overwhelming answer **is: NO!**" (Emphasis in original.) Southern Comfort is mistaken. As we demonstrated in our initial brief, the United States Court of Appeals for the Federal Circuit specifically addressed this issue in Commercial Contractors, Inc. v. United States, 154 F.3d 1357 (Fed. Cir. 1998). In that case, the Federal Circuit held that if a contractor's interpretation of the contract, as articulated in its certified claim, is unreasonable, its submission of the certified claim violates (1) the Forfeiture of Fraudulent Claims Act ("FFCA"), 28, U.S.C. § 2514; (2) the antifraud provision of the Contract Disputes Act ("CDA"), 41 U.S.C. § 604; and (3) the False Claims Act ("FCA"), 31 U.S.C. §

3729(a) (collectively referred to as the "fraud statutes").

Not only does Southern Comfort fail to recognize the binding precedent of the Federal Circuit in Commercial Contractors, but it cites to non-binding authority of the Eighth and Ninth Circuits. Southern Comfort cites U.S. Ex Rel. Butler v. Hughes Helcopters, Inc., 71 F.3d 321, 329 (9th Cir. 1995), and United States v. Basin Electric Power Cooperative, 248 F.3d 781, 792 (8th Cir. 2001), for the proposition that an improper interpretation of a contract does not constitute a false claim for payment. Pl. Br. at xxiv. The Federal Circuit has underscored that decisions of other circuits are not binding upon the Federal Circuit. Amerikohl Min., Inc. v. United States, 899 F.2d 1210, 1214 (Fed. Cir. 1990). Although this Court is permitted to look to other circuits for guidance, this Court cannot rely upon other circuits if their decisions contravene the legal authority of the Federal Circuit, which is binding upon this Court. Here, the proposition that Southern Comfort cites in the Butler and Basin Electric decisions is directly contravened by Commercial Contractors. Whereas Butler and Basin Electric appear to allow a pure contract interpretation defense to a False Claims Act claim, Commercial Contractors holds that if the contractor's interpretation is unreasonable, it cannot seek refuge from the fraud statutes. Commercial Contractors, 154 F.3d at 1364. Accordingly, Southern Comfort's reliance upon Eight Circuit and Ninth Circuit case law is inapposite.

B. Southern Comfort's Defense That Testimony Of Mr. Antonevich and Mr. Fowler Should Be Disregarded Because They Could Not Recall The Exact Words Of Mr. Ellis's Admissions Eight Years Ago Is Unavailing

As we demonstrated in our original brief, the uncontradicted evidence demonstrates that Southern Comfort knew variable frequency drives ("VFDs) were required. Mr. Ellis's knowledge of the VFD requirement was manifested in numerous ways: (1) by directing his own electrical

subcontractor to install VFDs prior to any discussion or dispute with the Air Force; (2) by affirming his understanding to Mr. Thron, his own neutral third-party; (3) by expressing his understanding to his own subcontractors; (4) by receiving correspondence from his subcontractors and one of his subcontractor's lawyers; and (5) by acknowledging his understanding to others in at least two separate meetings, as testified to by Mr. Antonevich and Mr. Fowler. In its post-trial brief, Southern Comfort fails to acknowledge or dispute the evidence supporting (1), (2), (3), and (4), above. With regard to the testimony of Mr. Antonevich and Mr. Fowler, both of whom heard Mr. Ellis acknowledge, in different meetings, that he understood that VFDs were contractually required, Southern Comfort attempts to belittle its significance because "neither could remember Mr. Ellis' exact words." Pl. Br. at xxiv. Given that the meetings took place eight years ago, it is hardly surprising that these witnesses could not recall a verbatim quote, as if recorded by a court reporter. To expect more would be completely unrealistic. Both Mr. Antonevich and Mr. Fowler testified credibly that, although they could not recall the precise language of Mr. Ellis, both understood that Mr. Ellis acknowledged his responsibility to provide VFDs as part of Southern Comfort's contractual requirement. Tr. 608:4-8; 823:12-14. Because Southern Comfort knew that VFDs were contractually required, but nevertheless submitted a certified claim to the Government indicating that VFDs were not required, Southern Comfort has violated the fraud statutes.

## II. Southern Comfort Has Failed To Establish That VFDs Were Not Required

### A. Southern Comfort's Latest Excuse – That The Subcontractors May Have Missed The VFD Requirement Because They Were "In A Hurry" – Is Unavailing To Southern Comfort, The Prime Contractor Responsible For Coordinating The Project

In our initial brief, we demonstrated that VFDs were specified in the mechanical drawings, and in various mechanical and electrical specifications, including drawing M 13, and sections 15855 and 16481 of the contract. Southern Comfort now attempts to circumvent its requirement to provide VFDs based upon the testimony of its subcontractor, Dofus Scott: "[h]e testified that when you bid on a job such as this, you are in a hurry because of the short response time and you do not have time to go over everybody's specifications." Pl. Br. at xxv-xxvi. Southern Comfort reiterates this point: "you do not have time to go over everyone's specification sections." Pl. Br. at xxvi. Southern Comfort is mistaken.

It is well established that the prime contractor is responsible for coordinating the mechanical and electrical requirements and ensuring that the contract drawings and specifications are followed. As we set forth in our initial brief, the contract specifically required such coordination. General Notes no. 4 provides as follows: "[a]ll new installations to be coordinated with electrical and mechanical requirements." DX 28-007; Tr. 855:14-16. Ms. Christina Powers, the individual that included those requirements in the contract drawings, testified that the purpose of General Note no. 4 was to ensure that the architectural drawings were coordinated with electrical and mechanical drawings. Tr. 856:3-6. She also testified that the requirements of General Note no. 4 – and all of the requirements in A-1 through A-6 – applied to all of the mechanical and electrical drawings in the project. Tr. 856:17-24. Accordingly, Southern

Comfort's attempt to evade responsibility, by claiming that one of its subcontractors was "in a hurry", is unavailing.

This Court should also reject Southern Comfort's argument that it neglected to spot the VFD requirement because it was hurried, because the Government requested a bid verification in this case and thus gave Southern Comfort additional time to verify the accuracy of its bid. JX 1. It is undisputed that after receiving Southern Comfort's bid, the contracting officer requested Southern Comfort to "thoroughly review[] all bidding documents, specifications, and drawings applicable" to the project. DX 115. It is also undisputed that Southern Comfort signed the bid verification, stating that it "reviewed and re-examined the Plans, and Specifications, the terms of the Bid Invitation, all Drawings, and all of our work sheets pertaining to the above referenced Project." DX 116. Given that the coordination responsibility rests upon the prime contractor, and given that Southern Comfort reviewed all of the documents, specifications and drawings at least twice, Southern Comfort's latest excuse that its subcontractors were hurried and therefore failed to recognize the VFD requirement should be rejected.

B. By Acknowledging The Existence Of A Patent Ambiguity Relating To VFDs, Southern Comfort Is Precluded From Asserting That VFDs Were Not Required

As the Government set forth in its initial brief, the VFD requirement was explicit in both the contract drawings and specifications. However, for purposes of argument, even if a patent ambiguity exists, Southern Comfort would still be required to furnish the VFDs because a contractor is under a duty to attempt to resolve the ambiguity prior to bidding if the contractor subsequently wishes to rely upon the provision. See Interwest Constr. Co. v. Brown, 29 F.3d 611, 617 (Fed. Cir. 1994); Johnson Controls, Inc. v. United States, 229 Ct. Cl. 445, 671 F.2d

1312, 1319 (1982); Wickham Contracting Co. v. United States, 212 Ct. Cl. 318, 328, 546 F. 2d 395, 397-400 (1976); see also S.O.G. of Arkansas v. United States, 212 Ct. Cl. 125, 128, 546 F.2d 367, 369-71 (1976) (rule requiring contractor to attempt to resolve patent ambiguity was designed to prevent post-award disputes by encouraging contractor to seek clarification before anyone is legally bound); Chris Berg, Inc. v. United States, 197 Ct. Cl. 503, 515, 455 F.2d 1037, 1045 (1972) ("It is not the actual knowledge of the contractor, but the obviousness of the discrepancy which imposes the duty of inquiry.").

Section 15855, ¶ 1.4(C.) sets forth guidelines for "Variable Air Volume Air Handling Units with Variable Frequency Drive – see specification section 16480." DX 105-076 (emphasis added). Southern Comfort now asserts that the absence of "Specification Section 16480 is a patent ambiguity. This is of the type that is so clear that it is obvious that something is incorrect or missing in the contract." Pl. Br. at xxv. If the absence of section 16480 constitutes a patent ambiguity, as Southern Comfort asserts, it had a duty to inquire. By failing to resolve the ambiguity prior to contract award, Southern Comfort waived its right to rely upon the fact that the provision was missing.

III. Southern Comfort Failed To Prove That Grounding Was Not Required

As we demonstrated in our principle brief, drawing E-34 required Southern Comfort to "INSTALL 2-500 MCM THHN GROUND CONDUCTORS IN 3"EMT(TYP) BUSH CONDUIT ENDS AT EACH PLATE." DX 028-067 (emphasis in original). We also demonstrated that an arrow led from the installation instructions to a solid continuous line, representing new installation work. Tr. 759:18-760:2. When the Court asked Mr. Butcher whether, assuming the solid line represents grounding, he possessed sufficient information in the

specifications and drawings to "be able to accomplish the task [of installing grounding conductors]", he responded as follows: "I could accomplish the task. Yes, sir." Tr. 398:7-16.

Southern Comfort now asserts that the requirement was improper because "there is no line or other device indicating a connection between the [new grounding system and the old system.]" Pl. Br. at xxviii. Without relying upon any evidence or testimony, Southern Comfort asserts that "there is nothing to alert a bidder that the 'system' he is to install is not a 'stand alone' system that would not require a grounding point." Id. This constitutes improper supposition by Southern Comfort, as it is unsupported by record evidence. Furthermore, the testimony of Mr. Butcher underscored that sufficient information was provided for Chrome Electric to install grounding conductors. To the extent there was confusion or ambiguity over the Government's clear instruction to "INSTALL 2-500 MCM THHN GROUND CONDUCTORS IN 3"EMT(TYP) BUSH CONDUIT ENDS AT EACH PLATE", Southern Comfort could have simply sought clarification from the Government.

## IV. The VFD and UPS Delays Were Concurrent – Thereby Precluding Southern Comfort From Recovery

In its brief, Southern Comfort cites to Tyger Construction Company, Inc. v. United States, 31 Fed. Cl. 177 (1994), for the proposition that this Court can award damages in situations involving concurrent delay. Again, Southern Comfort is mistaken. In Tyger Construction, this Court held that where "the causes of delay are concurrent, the contractor cannot recover unless its delay is shown to be separate from that caused by the Government. Tyger at 256 (citing William F. Klingensmith, Inc. v. United States, 731 F.2d 805, 809 (Fed. Cir. 1984)). The Tyger Court then found separate and distinct non-concurrent periods of delay – some caused by the United

States and some by the contractor:

> [T]he [Court believes the] critical path [] run[s] as follows: The fan delay period began on August 28, 1986, . . .[t]he critical path then shifted to the CVRs when the CVR delay period began . . on March 10, 1988. . . . The critical path shifted once again when the ductwork repair period began on March 20, 1990. . . . [and] . . . [t]he ductwork delay ended on October 30, 1991."
>
> * * *
>
> Delay damages are apportioned, or allocated, according to both parties' contribution to the delay period. Defendant is responsible for delay caused by FDA's failure to take reasonable action into investigating the low airflow problem and implementing a solution. Defendant is also responsible for the delay that the FDA caused by requiring plaintiff to pursue the false lead concerning the fans. Plaintiff on the other hand is responsible for the reasonable time period involved in remedying the CVR and DPT problems. Plaintiff is also responsible for Kirlin's growing recalcitrance in failing to provide complete balance data for AHU Nos. 5-13.

Tyger at 258-260. In other words, the Court specifically determined which delays were caused by the Government and which were caused by the contractor. Because the delays were not concurrent, and were attributable to both parties, each was held accountable for its own delay.

Here, unlike the situation in Tyger, we have demonstrated that both the UPS and VFD delays were concurrent – and therefore non-compensable. Southern Comfort has produced no delay analysis to refute the exhaustive critical path analysis provided by Mr. Paullin and Mr. Doran. Rather, contrary to the mandate of the Federal Circuit in Kinetic Builder's Inc. v. Peters, 226 F.3d 1307, 1317 (Fed. Cir. 2000), Southern Comfort argues that a critical path analysis was not required. Tr 413: 9-16.

Contrary to Southern Comfort's assertions, neither Sipco Services & Marine Inc. v. United States, 41 Fed. Cl. 196 (1998), nor Blinderman Construction Co., Inc. v. United States,

695 F.2d 552 (Fed. Cir. 1982), supports the contention that damages can be awarded for periods of concurrent delay. In Sipco Services, the plaintiff contested a termination for default based upon excessive control and over-inspection by the defendant. Sipco Services, 41 Fed. Cl. at 212. This Court found that the defendant caused the delay and overturned the termination for default. Id. at 227. In Blinderman, the contractor alleged that is was delayed in performance because occupants failed to cooperate in providing the contractor access to the properties. Blinderman, 695 F.2d at 555. The court held that the United States breached its duty to provide access to the property. Id. at 557-558. In citing Sipco Services and Blinderman, Southern Comfort offers no legal precedent that describes the ramifications of concurrent delay experienced in the performance of this contract. In fact, the court in Blinderman explicitly acknowledged that it could not rule upon the issue of concurrent delay because it had not been briefed or developed in the court below. Id. at 559. Southern Comfort has failed to demonstrate any segregative delay and offered no evidence to support its assertion that concurrent delay is compensable. On the contrary, the Government, in its initial brief, demonstrated that Southern Comfort cannot recover for concurrent delay. Avedon Corp. v. United States, 15 Cl. Ct. 648, 653 (1988) (recovery denied "because concurrent delays rendered the [Government-caused] delay . . . irrelevant"). Accordingly, Southern Comfort is precluded from recovering monetary compensation for this compensable delay.

Finally, Southern Comfort attempts to confuse the issue by asserting that the VFDs could not be installed until the UPS was in place because the VFDs required 480 volts and the temporary power that existed prior to the UPS installation only carried 277 volts. Pl. Br. at xxix-xxx. Again, Southern Comfort's assertions are contrary to the evidence and testimony. As we

demonstrated, the AHUs required 480 volts and the VFDs controlled the supply of that voltage to the AHUs. Tr. 345: 6-8, 375: 2-21, 1141: 7-16. Furthermore, the AHUs were installed and running long before the UPS was supplied. Tr. 1153: 7-20. This is not surprising given that drawing E4 clearly identifies 480 volt power existed in the building and ran the AHUs prior to the UPS installation. DX 28-034. Accordingly, there is no connection between the temporary power and the installation and testing and balancing of the air conditioning system. Southern Comfort's baseless assertions should be rejected.

## CONCLUSION

For all of these reasons, defendant respectfully requests that the Court find in favor of the Government pursuant to the fraud statutes and that the Court deny Southern Comfort's requested relief.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ James M. Kinsella by Robert E. Kirschman, Jr.
JAMES M. KINSELLA
Deputy Director

s/ David R. Feniger
DAVID R. FENIGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 307-3390
Fax (202) 305-2118
Attorneys for Defendant

OF COUNSEL:

JOHN LAURO
Trial Attorney
Contract Litigation Division
Air Force Legal Services Agency

July 6, 2004